IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OWEN ROBERTS HOFECKER, JR., )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 18-01
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

# OPINION AND ORDER

## Synopsis

Plaintiff Owen Hofecker Jr. ("Hofecker") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the ALJ's decision denying his claim for a period of disability and disability insurance benefits (DIB). He alleges a disability beginning on February 1, 2012. (R. 10).[1] Following a hearing before an ALJ, during which time both Hofecker and a vocational expert ("VE") testified, the ALJ denied his claim. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 11, 14. For the following reasons, Hofecker's Motion will be denied, and Defendant's Motion will be granted.

## Opinion

1. Standard of Review

---

[1] The ALJ determined that Hofecker met the insured status requirements for the Social Security Act through December 17, 217. (R. 12)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)6 and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa.

1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

As stated above, the ALJ denied Hofecker's claim for benefits. At step one of the analysis, the ALJ found that Hofecker had not engaged in substantial gainful activity since February 1, 2012. (R. 12) At step two, the ALJ concluded that Hofecker suffers from the following severe impairments: coronary artery disease status post stenting and coronary artery bypass grafting; diabetes mellitus with neuropathy; and degenerative disc disease. (R. 12-13) The ALJ found that Hofecker's mental impairments do not cause more than a minimal limitation in his ability to perform basic mental work activities and therefore are nonsevere. (R. 15) At step three, the ALJ determined that Hofecker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 16-17) Between steps three and four, the ALJ found that Hofecker:

> has the residual functional capacity to perform light exertion with lifting and carrying 20 pounds occasionally and 10 pounds frequently. However, the claimant is limited to three hours standing / walking with maximum intervals of those activities being up to one hour before transferring with no restrictions on sitting. The claimant can occasionally balance, stoop, crouch, crawl, kneel, and climb, but never on ladders, ropes, or scaffolds. He can occasionally push and

3

pull with the lower extremity. The claimant must avoid concentrated exposure to temperature extremes of cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, vibrations, and hazards including moving machinery and unprotected heights.

(R. 17) In so finding, the ALJ gave "little weight" to the opinion proffered by Dr. Cash, Hofecker's treating physician, and "partial weight" to the opinion proffered by Dr. Magurno, a consultative examiner. At step four, the ALJ found that Hofecker is capable of performing his past relevant work as an intelligence officer. (R. 21-22) Consequently, the ALJ did not engage in the fifth step of the sequential analysis.

### III. Discussion

Hofecker contends that the ALJ erred in her assessment of the residual functional capacity ("RFC"), and in her resulting conclusion that he could perform his past relevant work as an intelligence officer at the fourth step of the sequential analysis. As a preliminary matter, the Court notes that a significant portion of Hofecker's brief is devoted to demonstrating that substantial evidence of record supports a finding of disability. But the question before me is not:

> Whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings…. Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance. *Jesurum v. Sec'y of U.S. Dept. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (citing, *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Hundley v. Colvin*, 2016 WL 6647913, * 2 (W.D. Pa. Nov. 10, 2016) Consequently, I do not find persuasive Hofecker's discussions in this regard. Nevertheless, Hofecker contends that RFC fails to address the limitations identified by medical sources as well

as the ALJ's own findings regarding deficiencies in maintaining concentration, persistence or pace. I reject both contentions.

### A. Medical Opinions

The weight to be afforded a treating physician's opinion depends on the analysis of several factors, including the length, nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with record evidence, and any specialization of the physician. 20 C.F.R. § 416.927. "'[W]here … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit' and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Similarly, … the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record." *Becker v. Comm'r. of Soc. Sec. Admin.*. 403 Fed. Appx. 679 (3d Cir. 2010) (citations omitted).

Here, the ALJ thoroughly discussed and supported her reasons for discounting Dr. Cash's opinion and for giving it "little weight."[2] For instance, although the ALJ did, in fact, recognize that Cash served as Hofecker's treating physician, she noted that the limitations Cash imposed were contradicted by objective findings and reported information. Indeed, as the ALJ noted, Hofecker "consistently indicated to Dr. Cash that he was doing well with only chiropractic care." (R. 20) Further, as the ALJ found, Cash's severe restrictions are inconsistent with his instructions to exercise more frequently, "as

---

[2] Cash opined that, during the course of an eight-hour day, Hofecker would stand for a maximum of one hour; walk for a maximum of 30 minutes; and sit at a desk or work station for a maximum of two hours. (R. 935) Hofecker could lift less than ten pounds frequently but could lift twenty pounds only rarely. (R. 936) Cash further noted that Hofecker would need to rest / recline for a total of four to five hours during an eight-hour day. (R. 937)

5

often as five to six times a week." (R. 20) The ALJ also cited to a March 2016 MRI of Hofecker's lumbar spine which "showed no significant central canal or greater than mild neural foramina narrowing." (R. 20) Similarly, a February 2016 EKG and a March 2016 stress test yielded normal results. (R. 838-52) Cash also observed that Hofecker displayed "normal tandem gait" and that the "deep tendon reflexes of the bilateral extremities were all stable." (R. 19) Moreover, upon examination, Hofecker "had no edema of any extremity and normal foot aspect with examination." (R. 19) In July of 2015 Hofecker reported to Cash that he was "doing well" and Cash stated that Hofecker's diabetes mellitus and coronary artery disease were "stable." (R. 20) Additionally, Hofecker himself acknowledged that martial arts exercise had aided in increasing the range of motion in his back. (R. 20) The ALJ also pointed to information in Cash's records in which Hofecker denied any side effects of medication. (R. 21)

Similarly, the ALJ provided substantial and supported reasons for giving the opinion rendered by Dr. Magurno, a consultative examiner, only "partial weight."[3] The ALJ explained that "the lifting and carrying demands found by Dr. Magurno are consistent with the claimant's normal examinations of the upper extremities," but found that "there is no evidence supportive of any restriction in sitting or reaching." (R. 19) As the ALJ noted, "the severity of postural limitations given by Dr. Magurno are inconsistent with her own objective findings during the examination, as well as the notation by Dr. Cash that the claimant's coronary artery disease, diabetes mellitus, and neuropathy

---

[3] Magurno opined that Hofecker could sit continuously for 30 minutes, stand for 1 hour, and walk for 1 hour and that, during an eight-hour workday, he could sit for a total of 4 hours, stand for a total of 4 hours, and walk for a total of 4 hours. (R. 767) He also stated that Hofecker required the use of a cane to walk farther than 200 feet and that he was capable of lifting and carrying up to 10 pounds continuously and up to 20 pounds occasionally. (R. 766-67)

6

were all stable." (R. 19) Indeed, during the examination, Hofecker stated that he was "not doing too bad." (R. 760) He denied both chest pain and shortness of breath and stated that his neuropathy pain was a "2" on a scale of 1 o 10. (R. 760) He stated that his back pain was relieved by the use of a "TENS" unit. (R. 760) Magurno got on and off the examination table without difficulty. (R. 762) Magurno was also able to rise from a chair without difficulty. (R. 762) Without the cane Hofecker's gait was "minimally left antalgic." (R. 19) Hofecker acknowledged that martial arts helped to increase the range of motion in his back. (R. 20) Further, in 2016 Hofecker denied any numbness, tingling or burning in the feet. (R. 21) Hofecker also demonstrated full strength in all extremities and full grip strength bilaterally. (R. 19)

It is the ALJ's responsibility, and not that of the Court, to weigh the evidence at hand; assessing the degree and nature of medical opinions in light of the entire record is a matter for the ALJ. It is not within my authority to reweigh the evidence and I find no error in the ALJ's approach. My review of the record indicates that the ALJ reviewed the evidence of record, articulated her reasons for rejecting particular evidence, and supported her findings through reference to substantial evidence of record.

### B. Mild Limitations in Concentration Persistence or Pace

Hofecker also contends that the RFC is deficient in that it does not include accommodations for mild deficiencies in concentration, persistence or pace. At the second step of the analysis, the ALJ considered whether Hofecker's panic disorder, major depressive disorder and adjustment disorder cause more than a minimal limitation on his ability to perform basic mental work. (R. 15-16) In so doing, the ALJ concluded that Hofecker had no limitation with respect to the activities of daily living.

However, she found that Hofecker suffers from mild limitations in social functioning and concentration, persistence or pace. (R. 16) She also noted that Hofecker had experienced no episodes of decompensation. (R. 16) Having concluded that Hofecker's mental impairments cause no more than "mild" limitations, she determined that the impairments were "nonsevere" in nature. (R. 16) Hofecker does not appear to dispute this finding. In other words, Hofecker does not charge that the ALJ erred in concluding that he suffered only mild impairments with respect to concentration, persistence or pace. Rather, according to Hofecker, even a finding of "mild restrictions" in maintaining concentration, persistence or pace must be considered in assessing RFC.

I agree that an ALJ must consider all impairments, whether severe or not, in assessing a claimant's RFC. *Kobulnicky v. Astrue*, Civ. No. 11-1349, 2013 WL 1290955,* 7 (W.D. Pa. March 27, 2013) (stating that, even if substantial evidence supported the ALJ's Step Two finding that a claimant's mental impairments were not severe, the ALJ is "required to analyze what limitations her non-severe impairments cause in constructing his RFC finding."); see also 20 C.F.R. § 404.1545(a)(2). "[T]he RFC must consider all functional limitations, including mild limitations from impairments that the ALJ has previously determined to be non-severe." *Zapata-Alvarez v. Colvin*, Civ. No. 14-2830, 2015 WL 5179477, * 7 (E.D. Pa. Sept. 4, 2015) (emphasis added); *Curran v. Astrue*, Civ. No. 11-5894, 2012 WL 5494616, * 5 (E.D. Pa. Nov. 13, 2012). Although a non-severe impairment alone "may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of the claim." S.S.R. 96-8p. The responsibility for deciding a claimant's RFC rests with the ALJ and is based

8

on the entire record. 20 C.F.R. §§ 404.1545, 404.1546. In making an RFC assessment, the "ALJ must describe how the evidence supports his conclusion and explain why certain limitations are not accepted as consistent with the medical or other evidence." *Noah v. Astrue*, Civ. No. 12-091, 2013 WL 364235, * 2 (W.D. Pa. Jan. 30, 2013) (citations omitted). Here, the ALJ acknowledged as much. (R. 17) (stating that, "[i]n making this finding, the undersigned has considered *all* symptoms …." (emphasis added).

Further, the assessment of mental impairments done at Step Four is qualitatively different than that done at Step Two. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [the] paragraph[] B [criteria].… *Booker v. Colvin*, Civ. No. 14-4984, 2017 WL 914911, * 6 (E.D. Pa. March 7, 2017). As stated by the Third Circuit court:

the psychiatric review techniques described in 20 CFR 404.1520a and 416.920a on the Psychiatric Review Technique Form (PRFT) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRFT.

*Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004), citing SSR 96-8p.

The question before me then, is whether the ALJ discharged this duty. In reviewing the opinion as a whole, I find that the ALJ did. For instance, in formulating the RFC, the ALJ references the consultative psychiatric evaluation as being "reflective of

essentially normal objective findings." (R. 21) The ALJ also explicitly considered the GAF scores detailed in the VA mental disorder disability benefit questionnaire and finds them to be "inconsistent with the totality of mental health evidence." (R. 21) It is clear from this language, in conjunction with her finding that "[t]he objective findings do not corroborate the allegations to the disabling extent as asserted by the claimant…" that the ALJ considered mental impairments in formulating the RFC. (R. 18) Indeed, the ALJ gave "great weight" to Dr. Miller's assessment that Hofecker's "attention and concentration, as well as recent and remote memory skills were intact." (R. 15) The ALJ also gave great weight to the PRTF completed by state agency medical consultant Erin Urbanowicz who found that Hofecker had only "mild" difficulties in maintaining concentration, persistence or pace. (R. 106) Ideally the ALJ would have engaged in a more thorough analysis of limitations relating to concentration, persistence or pace in the context of the fourth step. But my review assures me that the ALJ's decision in this regard is supported by substantial evidence of record. Indeed, I note that although Hofecker claims that the ALJ's analysis was deficient in this regard, he does not identify any specific work-related accommodations resulting from his mild limitations in this respect. Hofecker bears the burden of proving disability through the fourth step of the analysis. Consequently, I find no error in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OWEN ROBERTS HOFECKER, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 18-01 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 5th day of March, 2019, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is denied and Defendant's Motion for Summary Judgment (Docket No. 14) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge